Law Office of James McGee, PLC
Steven Parnell Weaver
CA Bar #243000
325 W. Hospitality Lane, Suite 212
San Bernardino CA 92408
steven@mcgeeplc.com
909-571-5599

## UNITED STATES CENTRAL DISTRICT COURT

## STATE OF CALIFORNIA

| | |
|---|---|
| Perris Lee,<br><br>              Plaintiffs<br><br>vs.<br><br>County of San Bernardino, County of San Bernardino Sheriff Doe 1,<br><br>          Defendants | Case No.:<br>COMPLAINT FOR DAMAGES<br>- **42 U.S.C. Section 1983 and 1988:**<br>  State Created Danger;<br>  Failure to Protect;<br>  Failure to Intervene;<br>- Monell:Custom/Practice/Policy;<br>  Failure to Train;<br>- **State Common Law:**<br>    Negligence;<br>    Intentional/Negligent Infliction<br>    of Emotional Distress<br><br>DEMAND FOR JURY TRIAL |

## NATURE OF ACTION

1. This is an action for money damages brought pursuant to 42 U.S.C. Sections 1983 and 1988, the Eighth and the Fourteenth Amendments of the United States Constitution, and the California State Constitution

1

against the County of San Bernardino (DCSB), San Bernardino County Sheriff Doe 1 (DOE1).  DCSB and DOE1 collectively together will be referred to as DEFENDANTS.  Individual Defendant will be referred to as Doe 1.

## **PRELIMINARY STATEMENTS**

2. Plaintiff Perris Lee (PPL) was a pretrial inmate at the West Valley detention facility in the County of San Bernardino.

3. PPL was injured due to the DEFENDANTS' failure to provide safety and by deliberately putting him in harm's way or failing to stop harm that they reasonably knew was going to occur.

4.  DEFENDANTS have sole control over the opening and shutting of security doors.

5. DEFENDANTS facilitate and contribute to repeated attacks by inmates against inmates by their control over the security doors.

6. This custom/policy/practice (CPP) of opening and/or not securing security doors causes insecurity amongst the inmates, including PPL, and this CPP results in an inmate being physically harmed.

7. These CPPs run contrary to the duty of care a jailer owes to the prisoner and the special relationship that exists between them.

2

8. This is a civil action seeking damages against the DEFENDANTS for committing acts under color of law and depriving PPL of rights secured by the Constitution and laws of the United States (42 U.S.C. § 1983). The rights deprived are 1.) due process right to be free from violence from other inmates and 2.) constitutional right to be free from a government employee affirmatively placing PPL in a position of actual, particularized danger.

9. DEFENDANTS together acted with a deliberate indifference to a known and obvious danger.

10.    PPL brings this action against all the DEFENDANTS under the Eighth and Fourteenth Amendments of the United States Constitution and the Civil Rights Act of 1871, as codified at 42 U.S.C. § 1983, for injuries suffered due to the DEFENDANTS' substantial and deliberate indifference to their health and safety.

11.    PPL brings this action against the DEFENDANTS, for monetary damages to redress all their individual injuries resulting from DEFENDANTS' negligence, deliberate indifference, failure to protect and purposeful acts.

12.   PPL states claims against the DEFENDANTS for breach of duties imposed upon them by the Constitution of the State of California and for duties imposed upon them by the common law.

13. Due to the number of current pending lawsuits against the DCSB involving harm to inmates by other inmates and the failure to protect, which has continuing unabated, DEFENDANTS have constructive and actual notice of the longstanding, pervasive, well-documented custom, habit, and practice of allowing inmate-on-inmate violence, facilitating it, and showing a deliberate indifference toward a substantial risk of harm to PPL.

14. The following similar cases are examples of DCSB's custom and unwritten policy facilitating inmate on inmate violence in its jails and provide notice of the problems:

    a.  <u>Solis v. West Valley</u> 5:15-1005 – filed 5/21/2015 – inmate alleged request made for protective custody, request denied, and inmate placed in general population whereupon he was beat up by 3 inmates on 2 separate occasions and later put into protective custody.  Pro se dismissed for procedural reasons.

    b.  <u>Thomas v. County of San Bernardino</u> 5:15-cv-02323 – filed 11/11/2015 - 18-year-old 100-pound inmate who was

4

developmentally and physically disabled was placed in a 2-man cell at West Valley and killed by a 22-year-old 200-pound man with known violent propensities and prior assaults with inmates and staff while in custody.

c. <u>Clay v. San Bernardino</u> – No. EDCV 19-00032-AG(DFM) – originally filed 6/2/2016 - security door opened allowing Clay to be attacked and stabbed by other inmates while Sheriff Deputies watched and failed to intervene.

d. <u>Thomas v. County of San Bernardino</u> 5:19-cv-00167 – filed 1/28/2019 – Deputies purposefully put an inmate who plaintiff was testifying against in a cell with him, knowing he would be attacked, whereby he was in fact sliced with a weapon in his abdomen area, broke his wrist, busted his lip and deputies failed to stop the attack and watched.  The District Attorney had even warned the Sheriff's department to not allow the two inmates, "any room together, holding cell, county bus, transportation to and from court, for safety and security of the plaintiff." Sheriff Department deemed the event an accident during the grievance process.

e. <u>McGhee vs. San Bernardino County</u> 5:19-cv-00910-VBF-JC, - filed 5/15/2019 - inmate attacked by weapon received stiches and

bandages and alleged a long-standing practice of allowing prisoners to roam freely and to attack other prisoners.  Pro se case dismissed on procedural grounds.

f.  Bookman v. San Bernardino, EDCV 19-cv-1012 JGB (KKx) – filed 6/3/2019 - inmate stabbed by another prisoner while in protective custody and alleged pattern and practice of letting prisoners roam freely unsupervised despite information regarding threats.  Guards were warned about possible attack by Plaintiff.  Pro se dismissed on procedural grounds because no Monell claim filed although Court found enough pled for failure to protect.

g.  Martinez v. County of San Bernardino 5:19-cv-2057 – filed 10/25/2019 - inmates allege that deputies encouraged inmates to fight in an involuntary fight club and deputies would intimidate and scare inmates into fighting.  These deputies were later charged and convicted.  Settled.

h.  Covarrubias v. SCS Trujillo, EDCV 20-1456-JFW (JPR) – filed 7/1/2020 - inmate at West Valley placed by Sheriff Deputies on three separate occasions into a room with rival enemies or Deputies opened his cell door whereafter the inmate was injured. Pro se dismissed on legal sufficiency grounds.

6

i. <u>Estate of Michael McCormack v. County of San Bernardino</u>, 5:21-cv-00148- filed 1/25/2021 - wrongly housed mentally ill inmate at West Valley killed by violent inmate with previous known violent in-custody disputes.  Monell dropped as not adequately pled.

j. <u>Manago v. Martinez</u> – No. 5:21-CV-01939 MCS(KES) – filed 11/10/2021 - Manago alleges mixing of different classifications of inmates contrary to jail policy to encourage inmate on inmate violence.

k. <u>Townsend v. Deputies</u> No. EDCU 22-0525-VBF (JPR) – filed 3/24/2022 - security door opened allowing Townsend to be attacked by inmates while in protective custody.

l. <u>Pedro Hernandez vs. San Bernardino County</u>, 5:22-cv-01101-JGB-SP – filed 7/1/2022 - inmate at West Valley was injured with broken vertebrae during a second race riot that was preventable as the Sheriffs didn't separate the races after the first race riot.

m. <u>Mateo D. v. County of San Bernardino</u>, 5:22-cv-1357 – filed 8/1/22 - wrongly housed severely mentally ill inmate at West Valley killed when placed in a 2-man cell with a violent inmate with prior history of violence in custody.  Dismissed with leave to amend Monell failings.

n. <u>Villa v. County of San Bernardino</u>- 5:22-cv-01538-DSF-JC – filed 8/31/2022- Plaintiffs Villa and Morales were stabbed by an inmate and the DCSB failed to intervene though they could have, failed to protect and they created this danger by facilitating and allowing these actions.

o. <u>Alvarado v</u>. County of San Bernardino - 2:23-cv-02641 – filed 4/7/2023 - whereby protected inmates were stabbed and attacked by general population inmates because the DCSB facilitated access and physical and emotional harm happened thereafter.  In these incidents this DCSB and employees failed to intervene and that case is associated with this case per Order of the Court.

p. <u>Baltierra v</u>. County of San Bernardino – 5:23-cv-00931-DSF-JC – filed 5/23/2023 – whereby inmates were attacked when other inmates where allowed into the tier, that should not have been there, and the deputies purposefully initially failed to monitor what was going on to allow the attack to unfold.

15. Hector Gaona in the <u>Alvarado</u> case gave prior actual notice of threats to his safety when he was previously attacked while in protected custody by inmates that should have been segregated from him and by filing a

grievance thereafter. He was attacked a second time by inmates who should not have had access to him.

16.   Each Government-official Defendant's, official, and individual actions, has violated the Constitution.

17.   The alleged constitutional deprivations are the product of a policy or custom of San Bernardino County of putting inmates in purposeful, preventable danger without any consequences.

18.   DEFENDANTS are aware of the need to keep certain categories of inmates separated.

19.  There is a permanent and well-settled practice by San Bernardino County in not protecting inmates which gave rise to the alleged constitutional violations.

20.  DEFENDANTS have a habit, custom and thereby policy of housing, placing, or combining inmates, that should be separated and segregated from each other, together in the same cell, area or allowing unauthorized access.  The death or great bodily injury of one by the other happens thereafter and this custom presents a substantial known risk of serious harm.  DEFENDANTS consistently fail to take reasonable measures to abate this harm, which allows inmate on inmate violence to occur again and again and again.

21.    DCSB's officials, management and employees were negligent or intentional, by, without limiting other acts and behaviors: failing to follow its established safety procedures; failing to protect PLAINTIFFS from harm from other inmates; failing to provide necessary and appropriate security measures and maintenance in keeping security doors closed to prevent access for the safety, welfare and protection of PLAINTIFFS; failing to monitor the cameras in the control booth, ignoring them on purpose, and/or watching and failing to act.

22.    The DEFENDANTS violated PPL's constitutional rights and were negligent or intentional by, without limiting other acts and behaviors; breach of its duty of care PPL by: (1) not monitoring high security inmates and not following established protocols for doing such; (2) failing to properly screen and segregate inmates known to have acted violently in the past; (3) failing to provide sufficient gate maintenance at the unit where PPL is housed; (4) failing to follow its established safety procedures in keeping racially segregated inmates away from each other; (5) failing to provide necessary and appropriate security measures in stopping inmate on inmate attacks; (6) failing to implement a classification system and corresponding housing plan for inmates at the West Valley detention center to keep inmates separated and, (7) failing

to provide necessary and appropriate security measures necessary for the safety, welfare and protection of the PLAINTIFFS.

23. PPL suffered physical and emotional injuries and deprivation of his constitutional rights because of the DEFENDANTS' actions.

24. PPL is entitled to reasonable costs and attorney's fees under 42 U.S.C. 1988 and other applicable California codes and laws as to each claim or charge.

25. Under San Bernardino County policy for door security 6.505.00, inmates are unable to leave one secured area to enter another without a staff member opening a door.  Security doors shall remain closed unless authorized personnel are passing through.  Staff shall take precautions to ensure all persons are clear for movement prior to opening or closing doors and gates.  Staff shall not open any door until the person requesting entry or exit has been identified.

26. San Bernardino County policy for door security 6.505.00 was not adhered to, resulting in injury to the PLAINTIFFS.

27. Under San Bernardino County policy for inmate grievances 12.230.00 an administrative or criminal investigation is not completed if there is misconduct by a staff Member of the jail if a Facility Commander or

designee is notified of such an event unless for an allegation of sexual abuse and harassment.

28. San Bernardino County policy 12.230.00 shows that the Defendant shows substantial indifference to the known and obvious danger of facilitating inmate on inmate violence by not criminally or administratively investigating such occurrences.

29. Purposefully allowing inmates access to each other is not an action that an officer could reasonably believe was lawful .

30. Exposing an inmate to attack by another inmate shows that Deputy is in fact deliberately indifferent to the risk of harm to the inmate, in this case, PPL.

31. The harm PPL was in danger of suffering was objectively serious; The harm was in fact serious resulting in being attacked and severe emotional distress.

32. California Government Code Section 815.2(a) provides that a public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative.

33. DOE1 was acting within the scope of his employment when he facilitated and/or allowed the PLAINTIFFS to be attacked by other inmates.

## JURISDICTION AND VENUE

34. This Court has jurisdiction over the federal civil rights claim pursuant to 28 U.S.C. §§ 1331 and 1343 under the federal question doctrine. This Court has supplemental jurisdiction over the state-law claims pursuant to 28 U.S.C. § 1367(a).

35. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and (c).

36. This action is filed under the Eighth and Fourteenth Amendments to the United States Constitution, pursuant to 42 U.S.C. § 1983, under California Law and under common law, to redress injuries suffered by the PLAINTIFFS at the hands of DEFENDANTS.

37. DEFENDANTS are responsible for the opening, closing, security and maintenance of the gates and units in question.

38. PPL exhausted the formal grievance process individually and notices of a claim were presented and rejected thereafter by DEFENDANTS.  The claim stated the time, place, cause, nature, and description of matter causing any injuries.

## PARTIES

39.    Defendant San Bernardino County is a California municipal corporation that acts through individuals to establish its policies and that is capable of being sued under California Law.

40.    The San Bernardino County Sheriff Department (Department) is an entity under the jurisdiction of San Bernardino County.

41.    At all times mentioned herein and at all other relevant times, DOES#1 was employed by the Department acting within the course and scope of his employment as a DCSB employee at the time of the incident and is sued herein in both his official and personal capacities.

42.    PPL is an individual, and at all times mentioned herein was a citizen of the United States of America and a resident of the County of San Bernardino while incarcerated at San Bernardino County West Valley Detention Center located at 9500 Etiwanda Ave. Rancho Cucamonga CA 91739.


## STATEMENT OF FACTS GIVING RISE TO PPL's CAUSES OF ACTION

43.    The Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein and further states that:

14

44.     At the time of the incident, PPL was incarcerated at San Bernardino County West Valley jail located at 9500 Etiwanda Ave. Rancho Cucamonga CA 91739.

45.     Prior to March 5, 2023, PPL had neuropathy, a medical condition that caused his legs to lock up, and he would make grievances due to believing his ADA needs weren't being met while an inmate.

46.     On or about March 5, 2023, PPL was attacked in his cell, after a Sheriff's Deputy opened his door, providing an opportunity for another inmate to attack PPL. This attacked caused an orbital fracture in PPL's face causing excruciating pain.

47.     DEFENDANTS owed PLL a duty under the law to protect him from harm as his jailer.

48.     On March 5, 2023, DOE1 opened PPL's cell door, immediately after which, PPL was attacked by Ralph Parker, an inmate from cell 4, causing physical, psychological and emotional injury.

49.     The attack on PPL may have been allowed as retaliation for the number of grievances PPL was making due to his medical needs not being met. After this attack, Defendant County continued to deny PPL adequate access to medical care.

50.    PPL was attacked because a door was purposely or negligently not

secured by DOE1.

51.    PLL's medical chart notes there was pain in his nose with mild

erythema noted as well as a .25cm laceration to his left cheek. A later x-

ray showed an orbital fracture.

52.    Further, PLL has not received any meaningful medical care or

treatment of the initial grievances regarding his neuropathy, which

caused the retaliation nor proper treatment after the attack.

53.    PPL has been in constant fear of his security since this attack and

has experienced increased anxiety and paranoia.


**COUNT 1 –Violation of 14th Amendment – Due Process – State-**

**Created Danger**

54.    The Plaintiff re-alleges and incorporates the foregoing paragraphs as

if set forth herein and further states that:

55.    DOE1 breached its duty of care to Plaintiff through "deliberate

indifference" toward a substantial risk to the Plaintiff's health or safety by

opening a security door, which allowed an inmate to attack PPL without

timely intervention.  These acts were a known and obvious danger of not

providing the proper maintenance to control the opening or closing of a security door in a high security unit;

56.    DOE1 committed an affirmative act by opening the security doors of the unit, by not securing it and/or by not attempting to stop the attack or timely intervene when they had the opportunity, should and could have done so and knew the attack was going to happen and/or was happening;

57.    By DOE1 opening the door, or allowing the door to be opened, or by failing to close the appropriates doors, placed Plaintiff in a position of an actual, particularized danger by creating and exposing the Plaintiff to a danger that he would not have otherwise faced;

58.    DOE1 acted with deliberate indifference to a known and obvious danger by opening the door, or by allowing it to be opened without their control, and then by failing to take any action to timely protect Plaintiffs from attacking inmates; DOE1 control the opening and closing of the security doors and DOE1 were late to intervene to stop the attack;

59.    DOE1' failure to take appropriate action and their purposeful affirmative action in opening the door, or not controlling the door, created the actual, particularized dangers which caused injury to the

Plaintiff that was foreseeable and in fact resulted in physical and emotional harm to the Plaintiff;

60.    The DEFENDANTS' common practice of placing inmates needlessly in detrimental situations caused the Plaintiff to be attacked and thereby caused his emotional and physical injuries and DOE1 are thereby liable for compensatory damages under 42 U.S.C. Section 1983;

61.    Plaintiff further claim all of Plaintiffs' attorney's fees and costs incurred and to be incurred in Plaintiff's presenting, maintaining, and prosecuting this action under 42 U.S.C, 1988;

62.    The action of the Defendants are/were willful, wanton, oppressive, malicious, fraudulent, and extremely offensive and unconscionable to any person of normal sensibilities, and therefore warrants the imposition of exemplary and punitive damages as to Defendants.


**COUNT 2 – Violation of 14th Amendment – Pretrial Detainee's Claim of Failure to Protect**

63.    The Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein and further states that:

64.    DOE1 deprived the Plaintiff of particular rights under the Fourteenth Amendment by a purposeful failure to provide necessary and

appropriate security measures in keeping security doors secure and

failing to attempt to stop an attack by an inmate.

65.    DOE1 made an intentional decision regarding the conditions under

which the Plaintiff was confined by opening the door or not controlling

the opening of a door, of an inmate who thereafter attacked Plaintiffs

and by ignoring the fight in general;

66.    The opening of a security door housing a high security inmate of a

different race put the Plaintiffs at substantial risk of suffering serious

physical and emotional harm, which in fact did occur;

67.    DOE1 did not take any reasonable available measures to abate or

reduce that risk, even though a reasonable officer in the circumstances

would have appreciated the high degree of risk involved in not

maintaining control of the security doors and in ignoring attacks—

making the consequences of the defendant's conduct obvious; and

68.    By not taking and measures to abate or reduce the risk, DOE1

caused the Plaintiff's injuries.

69.    The injury to the Plaintiff was caused by a failure of DOE1 to provide

necessary and appropriate security for the safety, welfare, and

protection of Plaintiff in violation of the laws of the Constitution and

procedures governing the operation of DOE1 by allowing security doors

to be unsecured, not segregating inmates sufficiently and/or allowing

high security inmates to roam unsecured causing the injury to PPL.

70.    The Plaintiff re-alleges and incorporates paragraphs  60-62 regarding

Plaintiff's request for damages and attorneys' fees as if set forth herein

this Count.


## COUNT 3 – Violation of 14th Amendment – Failure to Intervene

71.    The Plaintiffs re-alleges and incorporates the foregoing paragraphs

as if set forth herein and further states that:

72.    DOE1 opened a security door allowing an inmate to attack PLL and

should have intervened to stop the attack.

73.    DOE1 had a reasonable opportunity to intervene to prevent attack

from occurring or continuing but failed to do so;

74.    In failing to intervene, the DEPUTY DEFENDANT was deliberately

indifferent to substantial risk of harm to Plaintiff; and

75.    DOE1's deliberate indifference to substantial risk of harm was risk

that caused the Plaintiffs' harm in being attacked.

76.    The Plaintiff re-alleges and incorporates paragraphs 60-62 regarding

Plaintiff's request for damages and attorneys' fees as if set forth herein

this Count.

## COUNT 4 – Negligence

77.   The Plaintiff re-alleges and incorporates the foregoing paragraphs as if set forth herein and further states that:

78.   DEFENDANTS breached its duty of care to the Plaintiff by allowing an inmate under the care and custody of the San Bernardino Sheriff's Department to attack PLL and by failing to protect PPL by failing to timely intervene.

79.   DEFENDANTS breached its duty of care to the Plaintiffs by failing to follow its established safety procedures resulting in PPL being attacked.

80.   Due to the actions of a San Bernardino Sheriff's Deputy, doors were not properly maintained, operated and/or secured;

81.   DEFENDANTS' officials, management and employees violated plaintiff's constitutional rights and were negligent by, without limiting other acts and behaviors: breach of its duty of care to Plaintiffs by negligently: (1) allowing prisoners access to weapons; (2) failing properly to screen and segregate inmates known to have acted violently in the past; (3) failing to follow its established safety procedures; (4) failing to provide necessary and appropriate security measures by negligently or purposefully leaving security doors unsecured; (5) failing

to develop and implement a classification system and corresponding

housing plan for inmates at the detention facility; (6) failing to either use

the cameras or simply turn to see to see an obvious attack that was

about to happen or purposefully choosing to not stop the attack.

82.   Due to the doors being unsecured, PLL was attacked and sustained

preventable physical, psychological, and emotional damage.

83.   The Plaintiffs re-alleges and incorporates paragraphs 60-62 regarding

Plaintiff's request for damages and attorneys' fees as if set forth herein

this Count.


## COUNT 5- Emotional Distress

84.   The Plaintiffs re-alleges and incorporates the foregoing paragraphs

as if set forth herein and further states that:

85.   DEFENDANTS engaged in outrageous conduct with an intent to or a

reckless disregard of the probability of causing PPL to suffer emotional

distress by facilitating an inmate-on-inmate attack by opening a security

door allowing an inmate access to attack.

86.   As a direct, proximate, and foreseeable result, PPL suffered severe

emotional distress from physical and emotional trauma induced by

DEFENDANTS and the outrageous conduct was the cause of the emotional distress suffered.

87.    The actions of the DEFENDANTS that caused the injury did so either purposefully or negligently.

88.    PPL re-alleges and incorporates paragraphs 60-62 regarding his request for damages and attorneys' fees as if set forth herein this Count.


## COUNT 6 – 1983 MONELL: MUNICIPALITY LIABILITY FOR CUSTOM/PRACTICE/POLICY; FAILURE TO TRAIN; RATIFICATION
### (PPL vs. DCSB)

89.    PPL re-alleges and incorporates the foregoing paragraphs as if set forth herein and further states that:

90.    PPL was deprived of constitutional rights – namely a.) due process right to be free from violence from other inmates and b.) constitutional right to be free from government employees affirmatively placing PPL in a position of actual, particularized danger and/or not doing anything to stop inmate-on-inmate violence when being in a position to stop it or failing to intervene; DEFENDANTS deprived PPL of these constitutional rights in this matter.

91.   DCSB and its employees have a custom of allowing, facilitating, encouraging, and failing to defend against inmate-on-inmate violence as alleged in this Complaint and Paragraphs 7, subsections a-p and 8; Each case cited involves placing inmates in a position of peril and/or Defendants failing to protect inmates from other inmates and/or being the in-fact cause of inmate-on-inmate violence.  PPL alleges DEFENDANTS allowed, facilitated, encouraged and/or failed to defend or intervene against the attacks against PPL in this matter;

92.   DCSB's policy/custom regarding inmate-on-inmate violence amounts to deliberate indifference to the plaintiff's constitutional right by turning a blind eye to inmate-on-inmate violence, facilitating it, encouraging it, watching it and not stopping it from happening or slowly reacting to it on a regular basis as alleged in this Complaint and Paragraphs 7, subsections a-n and 8; DEFENDANTS showed deliberate indifference to the PLAINTIFF constitutional rights by facilitating the attacks in this matter as alleged;

93.   DCSB's custom/policy regarding inmate-on-inmate violence, as alleged in this Complaint and Paragraphs 7, subsections a-p and 8, was the moving force behind the constitutional violation because PPL would not have been injured or attacked but for the DCSB's continuing actions;

PPL was injured and attacked because of the actions of the
DEFENDANTS in allowing prisoners to free roam unsecured and
consistently allowing access for inmates to attack other inmates;

94.   DCSB's current custom/policy regarding inmate-on-inmate violence is
untenable, unconstitutional, and illegal and represents the opposite of
the duty imposed on municipalities to reasonably protect those in its
custody.

95.   DOE1 acted under color of state law;

96.   DCSB's custom/policy regarding inmate-on-inmate violence as
alleged in this Complaint and Paragraphs 14, subsections a-p and 15
have been so consistent and widespread that it should be considered a
permanent and well-settled policy because the DCSB and their
employees keep repeating the pled actions and will not stop without
intervention.

97.   DCSB's custom/practice/policy of pitting inmates against each other
and failing to protect inmates is of a sufficient duration, frequency, and
consistency that the conduct has become a traditional method of
carrying out policy.

98.   DCSB has consistently failed to train its deputies on stopping inmate
violence before it happens and when they know or should know it is

going to occur. The training policies of the DCSB's were not adequate to prevent violations of law by its employees as they have a duty to protect inmates from violence nor was there adequate training to handle the usual and recurring situations with which they must deal.

99.    DCSB was deliberately indifferent to the substantial risk that its policies were inadequate to prevent violations of the law by its employees in protecting inmates;

100.  DCSB was deliberately indifferent to the known or obvious consequences of its failure to train its employees adequately;

101.  DCSB's failure to prevent violations of law by its employees in not protecting inmates from violence and the failure to provide adequate training caused the deprivation of the plaintiff's rights by DOE1.

102.   DCSB's failure to prevent law violations and to train played a substantial part in bringing about or causing the injury or damage to PPL.

103.  These policies, customs, practices and failure to train were the moving force and the reason behind DOE1's violations in Plaintiffs' constitutional rights.

104.  Considering the duties assigned to DOE1, the need for more or different training is so obvious, and the inadequacy so likely to result in

the violation of constitutional rights, that the policymakers of the DCSB can reasonably be said to have been deliberately indifferent to the constitutional rights of PPL.

105.   In addition to the series of similar events, the conduct alleged within this complaint falls within the narrow range of circumstances that makes a particular showing of obviousness.  **Allowing inmates access to other inmates for an unlawful purpose is against department policy.  Purposefully ignoring the start of the attack, after allowing access, shows deliberate indifference that on its own could substitute for a pattern of violations.**

106.   PPL re-alleges and incorporates paragraphs 60-62 regarding Plaintiffs' request for damages and attorneys' fees as if set forth herein this Count.

107.   Attorney's Fees are requested on All Counts as the Prevailing Party.

//

WHEREFORE, the PLAINTIFFS demands judgment against each and every Defendant individually and jointly as DEFENDANTS and prays for relief as follows as to each above Count or Charge:

1.) Compensatory damages in an amount according to proof, which is fair, just, and reasonable.

27

2.) Punitive and exemplary damages under federal and California law, in an amount according to proof and in an amount which is fair, just, and reasonable against DOE1 as allowable by law.

3.) All other damages, penalties, costs, interest, and attorneys' fees as allowed by 42 U.S.C 1983 and 1988; California Code of Civil Procedure 1021.5 and as otherwise may be allowed by California and/or Federal law; and

4.) For such other and further relief as the Court deems just and proper.

Dated: December 1, 2023

_____

Steven Parnell Weaver

Attorney for PLAINTIFFS

DEMAND FOR JURY TRIAL

The Plaintiffs hereby demands a jury trial on each and every charge or count.

Dated: December 1, 2023

_____

Steven Parnell Weaver

Attorney for PLAINTIFFS

28